UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JADY PIPES,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:12-cv-02885-MHH |
| **THE CITY OF FALKVILLE, ALABAMA,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

On September 30, 2015, Magistrate Judge Staci Cornelius entered a report and recommendation concerning defendant City of Falkville, Alabama's motion for summary judgment. (Doc. 40). In her report, Judge Cornelius recommended that the Court enter judgment as a matter of law in favor of the City on plaintiff Jady Pipes's Title VII retaliation claim, and she recommended that the Court deny the City's motion for summary judgment on Mr. Pipes's Title VII sexual harassment claim. (Doc. 40, p. 27). The City filed objections to the report and recommendation. (Doc. 41). Mr. Pipes filed a response to the City's objections. (Doc. 43). Because the parties did not consent to dispositive jurisdiction by a magistrate judge, the Clerk reassigned this action to the undersigned to review

Judge Cornelius's report and the City's objections. (Doc. 42). For the reasons stated below, the Court adopts Judge Cornelius's recommendation concerning Mr. Pipes's retaliation claim. The Court will grant judgment as a matter of law in favor of the City on Mr. Pipes's sexual harassment claim as well.

## I. STANDARD OR REVIEW

A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party objects to a report and recommendation, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The Court reviews for plain error factual findings to which no objection is made. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993); *see also United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam), *cert. denied*, 464 U.S. 1050 (1984) ("The failure to object to the magistrate's findings of fact prohibits an attack on appeal of the factual findings adopted by the district court except on grounds of plain error or manifest injustice.") (internal citation omitted); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006).

## II. DISCUSSION

### A. Title VII Retaliation

Judge Cornelius found that Mr. Pipes failed to demonstrate a genuine issue of material fact concerning his claim for Title VII retaliation.  (Doc. 40, pp. 16-27).  Neither party objected to this portion of Judge Cornelius's report and recommendation.  The Court finds no clear error in the factual findings on which the recommendation is based.  Therefore, the Court will enter judgment in favor of the City on Mr. Pipes' retaliation claim.

**B.     Title VII Sexual Harassment**

Judge Cornelius found that material questions of fact exist with respect to Mr. Pipes's Title VII sexual harassment claim.  (Doc. 40, pp. 8-16).  The City has objected to this portion of Judge Cornelius's report and recommendation.  Based on a *de novo* review of the record, the Court finds that the City is entitled to judgment as a matter of law on Mr. Pipes's sexual harassment claim because Mr. Pipes, a former police officer and chaplain in the Falkville Police Department, has not identified a disputed issue of material fact that demonstrates that the City subjected him to discrimination because of his sex.

Title VII prohibits employers from discriminating against an employee because of the employee's sex.  42 U.S.C. § 2000e-2(a).  "Sexual harassment is a form of sex discrimination prohibited by Title VII."  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000), *abrogated on other grounds by Burlington N.*

*& Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).  To establish a sexual harassment claim based on a hostile work environment, a plaintiff must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)).

Importantly, to prevail on a sexual harassment claim, a plaintiff must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discriminat[ion]* . . . because of . . . sex.'"  *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting 42 U.S.C. § 2002-2(a)(1)) (emphasis in *Oncale*).  For conduct to run afoul of Title VII, the conduct must "create a *discriminatorily* abusive working environment" and must place the employee complaining of discrimination at a disadvantage as compared to "'members of the other sex,'" such that the evidence demonstrates "that the harasser is motivated by general *hostility* to the presence of [the harassed sex] in the workplace." *Reeves*, 594 F.3d at 808 (emphasis added); *Oncale*, 523 U.S. at 80

4

(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)) (emphasis added).  A court reviewing a Title VII sexual harassment claim must be mindful of "the common-sense rule that the context of offending . . . conduct is essential."  *Reeves*, 594 F.3d at 810.

In this case, the conduct at issue is "racking" – same-sex conduct in which one man hits another man "[i]n the groin, in the rear end or whatever they can get to." (Doc. 30-1, pp. 29-30).  It is undisputed that a successful strike is physically painful, making it difficult to imagine any circumstance in which such vulgar, offensive conduct could be appropriate in the workplace.  (Doc. 27-2, p. 25 (94)).  It also is clear on the record in this case that Mr. Pipes found the unwelcome conduct embarrassing and emotionally disturbing.  Nevertheless, for his Title VII claim to survive the City's motion for summary judgment, Mr. Pipes had to identify disputed evidence that would allow jurors to conclude that when his harasser, the police chief, racked him, the police chief meant to put Mr. Pipes at a disadvantage because the chief was motivated by a general hostility to the presence of men in the police department.  The Court finds no such evidence in the record.

The first racking incident occurred in late November 2011 on the Monday after Alabama beat Auburn in the Iron Bowl.  Mr. Pipes arrived for his shift, and he heard Alabama's fight song playing loudly in Chief Christopher Free's office.

(Doc. 30-1, p. 28). Chief Free is an Alabama fan. Falkville's mayor in 2011 was an Auburn fan. Chief Free was "whooping and hollering about Alabama winning the Iron Bowl" and told Mr. Pipes that he "was going to let the mayor have it." (Doc. 30-1, p. 30). During Chief Free's celebration, he reached toward Mr. Pipes and tried to grab him on the genitals. (Doc. 30-1, pp. 29-30). Mr. Pipes jumped out of the way, and Chief Free's hand touched Mr. Pipes's left thigh. (Doc. 30-1, pp. 29-30). Mr. Pipes told Chief Free, "Oh, no, Chief. I don't play that. That's not going to get it with me." (Doc. 30-1, p. 29). Chief Free responded, "Okay. I'm still happy about my team winning the Iron Bowl." (Doc. 30-1, p. 29). Chief Free acknowledges the victory celebration but denies that he gestured toward Mr. Pipes. (Doc. 27-1, p. 27 (101)).

The second incident occurred in early December 2011. Mr. Pipes, Chief Free, and other members of the Falkville police and fire departments had gathered for breakfast at the fire station, as they often did. (Doc. 27-2, p. 24; Doc. 30-1, p. 31). According to Mr. Pipes, as he went to the kitchen to get something to drink, Chief Free "thumped [him] as hard as he could and hit [Mr. Pipes] in the crotch." (Doc. 30-1, p. 31). Chief Free made contact with the head of Mr. Pipes's penis and left testicle. (Doc. 30-1, p. 32). Mr. Pipes almost fell to the ground. As Mr. Pipes raised his left leg, Chief Free "took his index finger and shoved it up into [Mr.

Pipes's] rear end." (Doc. 30-1, p. 31). Mr. Pipes had on pants, but Chief Free's finger went about an inch and a half into Mr. Pipes's rectum. (Doc. 30-1, pp. 32-33). Chief Free laughed, but he did not say anything when he stuck his finger into Mr. Pipes's rectum. (Doc. 30-1, p. 32). Mr. Pipes left the kitchen and told Chief Free, "I cannot believe that you just did that me." (Doc. 30-1, p. 33). Chief Free's version of the encounter is different: he testified that he "grabbed [Mr. Pipes] on the back of his leg and yelled out to scare him, and that was the incident." (Doc. 27-1, p. 24 (92)).

For purposes of summary judgment, accepting Mr. Pipes's version of the two incidents and assuming that Chief Free's conduct had sexual connotation, Mr. Pipes has presented no evidence upon which a reasonable jury could find that the conduct constituted discrimination because of sex or that Chief Free was motivated by hostility toward men in the workplace.[1] Mr. Pipes argues that Chief Free's

---

[1] In a same-sex harassment case like this, a plaintiff may establish an inference of discriminatory conduct by offering credible evidence that the alleged harasser is homosexual. *Oncale*, 523 U.S. at 80-81. It is undisputed that Chief Free is not homosexual. (Doc. 27-2, p. 38; Doc. 30-1, p. 39). A plaintiff also may establish an inference of discriminatory conduct by offering direct comparative evidence that the harasser treated men and women differently in the workplace. *Oncale*, 523 U.S. at 80-81. The record reflects that Falkville once had a part-time female officer. (Doc. 27-2, p. 19). It is unclear whether this female officer worked in the Falkville Police Department while Mr. Pipes worked there. (*Id.*). Mr. Pipes has not offered evidence about the number of female employees who worked for the police department, and he has not offered comparative evidence that Chief Free treated male and female employees differently. (*See* Doc. 29, pp. 16-18; Doc. 40, p. 12; Doc. 43, p. 2). Even if Mr. Pipes had presented comparative evidence, to maintain a claim under Title VII, he still would have to demonstrate that Chief Free gave preferential treatment to female officers because he was motivated by discriminatory

actions "reinforce his superiority, power, and control over other males in his environment." (Doc. 29, p. 17). As support for this argument, Mr. Pipes cites a portion of Chief Free's deposition testimony in which Chief Free described racking incidents that occurred on his high school and college football teams. (Doc. 27-2, p. 25). Chief Free admitted that upperclassmen racked lower classmen as a form of hazing, and he did not rack players who outranked him. (Doc. 27-2, p. 25). Mr. Pipes also relies on Chief Free's admission that since he (Chief Free) has been employed with the City, he has racked other men, though he cannot remember a particular individual or a particular occasion. (Doc. 27-2, p. 25). Even assuming that this evidence demonstrates that Chief Free racked Mr. Pipes and other police officers to assert his superiority over them, the conduct still lacks the element of sexual discrimination indispensable to a Title VII claim.[2]

---

animus against male officers. Mr. Pipes's failure to present evidence of discriminatory animus is fatal to his Title VII claim. *See infra* pp. 8-10.

[2] Significantly, hearsay evidence on which Mr. Pipes relies undermines his theory that Chief Free engaged in racking to control subordinate officers. Mr. Pipes testified that Falkville City Councilman Lance Stidham told him that Chief Free also thumped him in the testicles. (Doc. 30-1, p. 34). According to Mr. Pipes, Councilman Stidham said that Chief Free "does it all the time, and guys at my work do it all the time, and they think it's funny." (Doc. 30-1, p. 34). Mr. Pipes also testified that Assistant Fire Chief Mike Butler told Mr. Pipes that he (Chief Butler) "had seen Chief Free do this to several of his firemen." (Doc. 30-1, p. 37). Mr. Pipes's testimony about what Mr. Stidham and Chief Butler told him is hearsay if Mr. Pipes offers the testimony to prove the truth of the matter asserted. A court may consider hearsay statements at the summary judgment stage if the statements could be "reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (internal quotation marks and citation omitted). "If, however, the declarant has given sworn testimony

Moreover, Mr. Pipes's theory that Chief Free used racking to exert his power and control unravels when the incidents of racking involving Mr. Pipes are viewed in context. The first took place while Chief Free was celebrating a victory in a football rivalry. The second took place in a social setting while firemen and police officers gathered for breakfast at the fire station. The context suggests "male-on-male horseplay," conduct that Title VII does not regulate. *Oncale*, 523 U.S. at 81. Neither Chief Free's language nor his conduct in either instance suggests that he was singling out Mr. Pipes because Mr. Pipes is male. *See Linville v. Sears, Roebuck & Co.*, 335 F.3d 822, 824 (8th Cir. 2003) (per curiam) ("While Farnham's striking Linville in the scrotum [three times] and laughing was probative of crude, gender-specific vulgarity, it was not, by itself, probative of

---

during the course of discovery that contradicts the hearsay statement, [the Court] may not consider the hearsay statement at the summary judgment stage." *Id.* In a declaration, Councilman Stidham states that he has "never seen Chief Free engage in conduct that [he] considered as sexual harassment toward any individual, male or female, including Pipes. Furthermore, Chief Free has never sexually harassed me or engaged in any behavior toward me that I considered sexually inappropriate." (Doc. 27-5, ¶ 13). Assistant Chief Butler states in a declaration that he has "no recollection of ever seeing Chief Free thump, 'rack,' or otherwise sexually harass any individual male or female, at any time or place. Furthermore, Chief Free has never done that to me personally or in my presence." (Doc. 34-1, ¶ 6). Because Councilman Stidham and Assistant Chief Butler have provided sworn testimony that contradicts the hearsay statements, the Court may not consider Mr. Pipes's testimony on this point; the Court "cannot assume that [Councilman Stidham and Assistant Chief Butler] will change [their] testimony at trial and testify in conformity with the hearsay statement." *Jones*, 683 F.3d at 1294. Even if the Court could consider the hearsay statements, though, they would prove that Chief Free racks all men who he encounters at work, even city councilmen. The statements would not demonstrate generally that Chief Free acted with discriminatory animus based on sex or, more specifically, that he racked subordinate police officers to establish his dominance over them.

gender discrimination."); *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 519 (6th Cir. 2001) (holding that a same-sex hostile work environment claim failed as a matter of law where a co-worker twice grabbed the plaintiff's genitals because the plaintiff failed to demonstrate that he was discriminated against because of his sex even though the conduct "was the classic example of men behaving badly").

Judge Acker has framed the issue in cases such as this eloquently. To paraphrase Judge Acker, the issue:

> revolves around repeated churlish, childish, gross, sordid, vulgar, foul, [and] disgusting [conduct] in the workplace. The question in the case, however, is not how vile and obnoxious this workplace [conduct] was. It was vile and obnoxious enough to score nine on a scale of ten[3] . . . The question for the court is rather whether this [conduct] morphed from [vile and obnoxious horseplay] into a cause of action under Title VII by an offended employee for same-sex sexual harassment.

*EEOC v. McPherson Cos., Inc.*, 914 F. Supp. 2d 1234, 1235 (N.D. Ala. 2012). The conduct at issue here did not. Mr. Pipes has every right to be offended and disgusted by the conduct he has described, but "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, 523 U.S. at 81-82. However vulgar and offensive racking may be, on the record in this case and on

---

[3] The conduct in this case musters a ten on a scale of ten.

the current state of the law in same-sex Title VII actions, "no reasonable jury could believe that [the two racking incidents in this case] constitute[] discrimination because of sex." *Davis v. Coastal Intern. Sec., Inc.*, 275 F.3d 1119, 1126 (D.C. Cir. 2002). The Court must "distinguish between simple teasing or roughhousing among members of the same sex" and conduct that speaks of discrimination on the basis of sex. *Oncale*, 523 U.S. at 82; *see also Harbert-Yeargin, Inc.*, 266 F.3d at 519 ("Since the conduct complained of in many of these sexual harassment cases is so offensive, it is easy to understand that a sense of decency initially inclines one to want to grant relief. It is easy to forget, however, that Title VII deals with discrimination in the workplace, not morality or vulgarity."). There is no admissible evidence of discriminatory motive in this case. Consequently, the Court finds that the City's motion for summary judgment on Mr. Pipes's Title VII sexual harassment claim is well-taken.[4]

---

[4] Although Mr. Pipes has no Title VII claim, he may have other remedies, including possible state law claims. *See Davis*, 275 F.3d at 1126 ("[W]hile Davis has no cause of action under Title VII, we note that he may have remedies under local law (though they may not provide for recovery of attorney's fees, as does Title VII)."); *Harbert-Yeargin, Inc.*, 266 F.3d at 522 ("I do not mean in any way to make light of Mr. Carlton's plight, but he had other remedies. Everything from a union grievance to a criminal complaint and a civil action for assault and battery. With a state civil action, the employer could still be a defendant and could have been liable under these facts for the actions of its agents and employees, particularly when those actions had been brought to the employer's attention . . . . The issue is not 'no wrong without a remedy.' The issue is how far Congress can go or, more accurately, has gone to regulate conduct in the workplace.").

### III.  CONCLUSION

For the reasons discussed above, the Court adopts in part Judge Cornelius's report and accepts in part her recommendation.  By separate order, the Court will enter judgment in favor in of the City on Mr. Pipe's Title VII sexual harassment and retaliation claims.

    **DONE** and **ORDERED** this March 31, 2016.

                                          _____
                                          **MADELINE HUGHES HAIKALA**
                                          UNITED STATES DISTRICT JUDGE